IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| CENTURYLINK COMMUNICATIONS, LLC as the successor to QWEST COMMUNICATIONS CORPORATION, LEVEL 3 COMMUNICATIONS, LLC, WILTEL COMMUNICATIONS, LLC, and GLOBAL CROSSING TELECOMMUNICATIONS, INC.<br><br>Plaintiffs/Counter-Defendants,<br><br>vs.<br><br>PEERLESS NETWORK, INC., et al.,<br><br>Defendants/Counter-Plaintiffs. | Case No. 1:18-cv-03114-SJC |

**MOTION FOR LEAVE TO TAKE ADDITIONAL
30(B)(6) DEPOSITION AND TO COMPEL PRODUCITON OF A
PREPARED WITNESS ON CERTAIN ORIGINAL 30(B)(6) DEPOSITION TOPICS**

Pursuant to Rules 30 and 37, FED. R. CIV. P., Plaintiffs CenturyLink Communications, LLC ("CenturyLink"), Level 3 Communications, LLC, WilTel Communications, LLC and Global Crossing Telecommunications, Inc. (collectively, "Plaintiffs"), by their undersigned counsel, seek leave to serve notice of an additional 30(b)(6) deposition of Peerless Network, Inc. and its wholly owned subsidiaries identified herein (collectively, "Peerless"). In addition, CenturyLink seeks to compel Peerless to produce a witness prepared to answer questions on three topics in Peerless's initial 30(b)(6) deposition that witnesses were unable to answer.

**Statement of Compliance with LR 37.2:** Pursuant to Local Rule 37.2, undersigned counsel certifies that he conferred in good faith with opposing counsel regarding the relief sought in this motion. Specifically, in December 2019, undersigned counsel conferred with Henry Kelly, Peerless's lead counsel, to schedule a second Rule 30(b)(6) deposition. In addition, during

deposition, undersigned counsel informed opposing counsel that the witness was unprepared on certain topics and would seek to compel responses; opposing counsel disagreed. Finally, counsel for Plaintiffs conferred with counsel for Peerless by email on January 14, 2020 regarding the relief requested herein. In sum, opposing counsel informed undersigned counsel that they object to the relief sought.

## INTRODUCTION

Plaintiffs have held one Rule 30(b)(6) deposition and informed Peerless that it needed another to cover new topics. Most of the topics relate to Peerless's counterclaims, which were not a subject of the original 30(b)(6) notice. The remaining topics concern areas that arose in the original 30(b)(6) deposition that raised new issues that needed to be addressed. The law strongly supports a second 30(b)(6) deposition in these circumstances.

In addition, there were three topics where Peerless presented a witness who was unprepared to address the subjects for which he was designated. The Court should also order Peerless to provide a knowledgeable witness on these three topics.

## BACKGROUND

In their Complaint, Plaintiffs identified various categories of charges Peerless improperly assessed (and continue to assess) to them. Among these are specific "common trunk port" charges, totaling over $900,000, which Plaintiffs alleged are improper under Peerless's tariff because the traffic in question does not traverse end office switches—a requirement set forth in Peerless's tariff for assessing such charges. *See* ECF No. 1 ¶¶ 68–79. In response to the Complaint, Peerless asserted counterclaims alleging Plaintiffs breached agreements between the parties, including a Customer Service Agreement and Settlement Agreements executed in 2014 and 2017, as well as Peerless's state and federal tariffs, by not paying access service charges

purportedly owed to Peerless thereunder. *See* ECF No. 57 ¶¶ 91–130.

On August 12, 2019, Plaintiffs served their notice of 30(b)(6) deposition, attached here as Exhibit A. During its initial 30(b)(6) deposition in September 2019, Peerless acknowledged that it is not entitled to bill common trunk port charges on calls that do not traverse end office switches, just as Plaintiffs alleged in their Complaint. However, Peerless claimed it did not bill "common trunk port" charges at all, but instead characterized the charges at issue as "usage sensitive digital trunk port" charges.

Plaintiffs' investigation into this characterization suggests that Peerless is charging indirect "Dedicated Tandem Trunk Port," or "DTTP," pursuant to Section 6.1.2(A)(5) of Peerless's interstate tariff, rather than "Common Trunk Port" charges as indicated by the electronic billing systems that process Peerless's invoices to Plaintiffs. *See* ECF No. 104 at 5–6 and exhibits referred to therein. Plaintiffs recently moved for leave to amend their Complaint in order to conform to this new evidence. *See id*.

Plaintiffs now seek leave to depose Peerless in order to learn the facts in Peerless's possession underlying this newly suggested basis for the charges at issue. In addition, Plaintiffs seek to inquire into Peerless's counterclaims. Specifically, Plaintiffs seek to depose Peerless on the following additional topics:

> 30. Your policies and practices for billing indirect DTTP charges under Section 6.1.2(A)(5)(b) of Your Interstate tariff, including but not limited to why indirect DTTP is submitted as SECAB rate element 36 ("common trunk port") instead of other SECAB rate elements, the functions Peerless performs to justify these charges.
>
> 31. Your policies and practices for billing direct DTTP charges on SIP connections under Section 6.1.2(A)(5)(a) of Your Interstate tariff, including but not limited to when you started billing these charges on entities, including Plaintiffs, whether you billed DTTP on SIP connections to anyone before the tariff change in late 20015 [sic], and if so to whom you were billing such charges, and if not, why you were not billing such charges prior.

3

32. A description of the entities (including but not limited to carriers) who connect to You via SIP technology (as described in Section 6.1.2(A)(5)(a) of Your interstate access tariff), and the date on which they first connected to You via SIP connections.

33. Facts and evidence regarding how You determine when an entity (including but not limited to carriers) is responsible for indirect DTTP charges as described in Section 6.1.2(A)(5)(b) of Your interstate access tariff.

34. A description of the entities to which You bill the $250 per circuit installation charges as set forth in Section 6.6.2 of Your interstate access tariff, the date when you started to bill such charges to each entity, and the reason why you started billing each entity for the charge on that date.[1]

35. The 2017 Settlement Agreement and any addenda or modifications thereto, including but not limited to its negotiation, execution, implementation, and interpretation.

36. The legal and factual basis for Your claim that Level 3 has breached the 2017 Settlement Agreement as claimed in Counterclaim Count II, including but not limited to the services You claim Level 3 is using under the 2017 Settlement Agreement as alleged in ¶ 99 of Your Counterclaims, the specific "originating and terminating access service charges" You claim Level 3 has failed to pay as alleged in ¶¶ 101–02 of Your Counterclaims.

37. The legal and factual basis for Your claim that Plaintiffs have breached Your interstate tariff, including but not limited to the specific "originating and terminating access service charges" You claim Plaintiffs have failed to pay under the tariff as alleged in ¶¶ 106–07.

38. The legal and factual basis for Your claim that CenturyLink and Level 3 have breached Your intrastate tariffs, including but not limited to the specific "originating and terminating access service charges" You claim Plaintiffs have failed to pay under the tariffs as alleged in ¶¶ 111–12.

39. The legal and factual basis for Your claim that CenturyLink has breached the CSA, including but not limited to the specific "originating and terminating access service charges" that CenturyLink has failed to pay under the CSA as alleged in ¶¶ 95–96 of Your Counterclaims.

---

[1] This topic concerns the third category of damages claims in Plaintiffs' Complaint. Those claims concern access build-out interconnection (i.e., installation) charges Peerless billed to CenturyLink 3 starting in March 2017. Peerless did not bill these charges to CenturyLink from 2008—when the relationship began—even though the charge was in their tariff in 2008. *See* Exhibit C (Deposition of Patrick Phipps) pp. 175–76. CenturyLink clearly believes its contract (CSA) with Peerless prohibits the charges. *See* ECF No. 104-1 ¶¶ 88–89. If Peerless was billing other carriers this charge before March 2017, it will further validate CenturyLink's position.

    40.    The specific disputes that you want the Court to declare Plaintiffs must pay as part of your claims for Declaratory Judgment.

*See* Exhibit B, Notice of Continued Deposition. Importantly, none of the foregoing topics were covered during the initial Rule 30(b)(6) deposition.

Plaintiffs previously attempted to set a deposition of Peerless on these topics, sending Peerless a notice of deposition on November 5, 2019. However, on December 3, 2019, Peerless served its objections to the notice, refusing to provide any witness on the grounds that Peerless had already been deposed. Attempts to procure Peerless's cooperation in setting a deposition on these topics bore no fruit. Because of Peerless's refusal to agree to the deposition, Plaintiffs are forced to bring this motion seeking leave to do so.

## ARGUMENT

### I. The Court Should Allow Plaintiffs Leave To Notice A Second 30(b)(6) Deposition.

Under FED. R. CIV. P. 30(a)(2)(A), "[a] party must obtain leave of court, which shall be granted to the extent consistent with the principles stated in Rule 26(b)(2), if . . . the parties have not stipulated to the deposition and . . . the person to be examined already has been deposed in the case." *See also In re Sulfuric Acid Antitrust Litig.*, 230 F.R.D. 527, 531 (N.D. Ill. 2005). "Leave to conduct a second deposition should ordinarily be granted; the burden is on the opposing party to demonstrate that '[1] the discovery sought is unreasonably cumulative or duplicative, or is obtainable from some other source that is more convenient, less burdensome, or less expensive; [2] the party seeking discovery has had ample opportunity by discovery in the action to obtain the information sought; or [3] the burden or expense of the proposed discovery outweighs its likely benefit, taking into account the needs of the case, the amount in controversy, the parties' resources, the importance of the issues at stake in the litigation, and the importance

of the proposed discovery in resolving the issues.'" *Judicial Watch, Inc. v. U.S. Dep't of Commerce*, 34 F. Supp. 2d 47, 54 (D.D.C. 1998) (quoting Fed. R. Civ. P. 26(b)(2)).

"As with many discovery disputes, the trial court has the discretion to determine whether a party may take a second deposition. However, '[t]he party opposing the deposition must demonstrate "good cause" for a protective order.'" *Am. Hardware Mfrs. Ass'n. v. Reed Elsevier, Inc.*, No. 03 C 9421, 2007 WL 4224340, at *2 (N.D. Ill. Nov. 21, 2007) (quoting *Perry v. Kelly-Springfield Tire Co., Inc.*, 117 F.R.D. 425, 426 (N.D. Ind. 1987)).

Here, Peerless has no reasonable argument that any of the Rule 26(b)(2) factors apply because the proposed deposition will cover new topics, Plaintiffs cannot obtain the testimony from other sources, and the benefits of an additional deposition far outweigh any conceivable burden. Thus, Peerless cannot carry its own burden of demonstrating the absence of good cause or that leave to conduct the deposition should not be granted. *See Judicial Watch, Inc.*, 34 F. Supp. 2d at 54.

### A. The Deposition Will Not Be Cumulative or Duplicative.

As commentators on the Federal Rules have observed, "the one–deposition provision" of Rule 30(a)(2), if mechanically applied, "could be an obstacle to sensible handling of Rule 30(b)(6) organizational depositions. Although such a deposition is properly regarded as the deposition of an organizational party, rigid insistence on adhering to the one–deposition rule in such circumstances would not make sense." 8A Charles Alan Wright & Arthur R. Miller, Fed. Prac. & Proc. Civ. ("Wright & Miller") § 2104 (3d ed.). That is so, in part, because "such depositions are limited to certain enumerated topics, rather than covering all matters within the scope of discovery under Rule 26(b)(1)." *Id.* "A sensible method for applying the one–deposition provision to Rule 30(b)(6) depositions," these commentators thus reason, "might focus initially

6

on the listing of topics for examination in the deposition notice. If the second notice lists the same topic as the first notice, that would raise concerns about the one–deposition protection. Otherwise, it may make sense to consider the second 30(b)(6) deposition not to be the same deposition." *Id.* ("Although the one–deposition provision in Rule 30(a) therefore may apply technically to a second Rule 30(b)(6) notice to an organizational party, it is likely that refusals to proceed on that ground will not be received with favor by courts if genuinely distinct topics are listed in the different notices.").

A comparison of the deposition topics in the first 30(b)(6) deposition notice (Exhibit A), and the second (Exhibit B), show the topics that will be the subject of the second 30(b)(6) deposition are wholly distinct from the topics of the first. Most of these topics inquire into the factual basis underlying Peerless's counterclaims against Plaintiffs, a subject area the first deposition notice left unexplored. The remaining topics inquire into the factual bases underlying Peerless's indirect DTTP charges—charges that were only identified as such based on evidence uncovered during and subsequent to Peerless's first 30(b)(6) deposition. That the additional Rule 30(b)(6) testimony Plaintiffs seek is based on evidence that was not available during its initial deposition of Peerless is further cause to grant Plaintiffs leave to explore these topics in a second 30(b)(6) deposition. *See Quality Aero Tech., Inc. v. Telemetrie Elektronik GmbH*, 212 F.R.D. 313, 319 (E.D.N.C. 2002) ("Plaintiff's proffered rationale for the second notice, newly-discovered information, would be sufficient for a finding of good cause under Rule 30."). Thus, an additional deposition will not retread any of the same ground as the first.

**B.      Century Link Cannot Obtain the Testimony from Other Sources.**

The new topics are specifically about Peerless's counterclaims against Plaintiffs, its characterization of its billing related to common trunk port charges, and the revelation that

7

Peerless seeks to argue that it has billed indirect DTTP charges rather than common trunk port charges. Peerless is the only entity with knowledge and explanations regarding its own policies and practices and the factual basis for its own claims against Plaintiffs. Without an additional deposition, Level 3 will have no other way of obtaining the discovery sought and would be prejudiced as a result.[2]

### C. Benefits of the Deposition Outweigh Any Potential Burden or Expense.

Finally, as commentators have observed, "the prime objective of the one–deposition provision in Rule 30(a) is to guard against imposing burdens on an individual deponent. An organizational party subject to a Rule 30(b)(6) notice may designate whomever it chooses—or several different people—to testify. As a result, the likelihood of the sort of imposition the rule guards against is quite small." Wright & Miller § 2104.

Here, the deposition for which Plaintiffs seek leave to conduct concerns the eleven specific subjects listed in Exhibit B rather than the full scope of discovery conceived by Rule 26(b)(1). If Plaintiffs are not permitted to take the deposition, they will be deprived of the opportunity to examine Peerless's proffered bases for its counterclaims against Plaintiffs, as well as its defense against Plaintiffs' claims relating to common trunk/indirect DTTP charges. The benefit of completing the requested depositions thus far outweighs any conceivable burden to produce the witnesses.

---

[2] In communications with Counsel, Peerless has suggested this Motion is somehow inconsistent with Plaintiffs' Motion for Leave to Amend (ECF No. 104) in that this previous motion ostensibly claimed no further discovery would be necessary. In reality, Plaintiffs stated that the amendments "do not require any additional *documentary* discovery," and noted that the parties had agreed to an extension of the discovery deadlines "to complete additional depositions." ECF No. 104 at 10. Thus, to the extent Peerless claims this request for leave to take Peerless's 30(b)(6) deposition is inconsistent with Plaintiffs' prior motions, that claim should be rejected.

For all these reasons, Peerless will be unable to carry its burden of showing that leave should not be granted for Plaintiffs to depose Peerless on the subjects listed in its proposed deposition notice, and leave to take the deposition on these subjects should be granted.

## II.     The Court Should Require Peerless to Provide Knowledgeable Witnesses.

Peerless failed to provide a knowledgeable witness on Topics 12 and 13, and a portion of Topic 4 of Plaintiff's original Rule 30(b)(6) deposition notice. The Court should require Peerless to adequately prepare a witness. Under Fed. R. Civ. P. 30(b)(6), individuals designated to testify on an organization's behalf must testify about "information known or reasonably available to the organization." *Id.* A corporation has a duty to "designate an individual to testify who has knowledge responsive to the subjects requested in the Rule 30(b)(6) notice." *Seaga Mfg., Inc. v. Intermatic Mfg. Ltd.*, 2013 WL 3672964, at *2 (N.D. Ill. July 12, 2013) (citing *Wachovia Securities, LLC v. NOLA, LLC*, 248 F.R.D. 544, 547 (N.D. Ill. 2008)); Wright & Miller, § 2103 ("The goal of the Rule 30(b)(6) requirement is to enable the responding organization to identify the person who is best situated to answer questions about the matter, or to make sure that the person selected to testify is able to respond regarding that matter."). A corporation "must adequately prepare its corporate representative to 'answer fully, completely [and] unevasively, the questions posed by [the discovering party] as to the relevant subject matters." *Seaga*, 2013 WL 3672964, at *2 (quoting *Buycks-Roberson v. Citibank Federal Savings Bank*, 162 F.R.D. 338, 348 (N.D. Ill. 1995)). When a Rule 30(b)(6) witness responds that he doesn't know anything about the noticed topics, that witness is inadequate. *In re Fluidmaster, Inc., Water Connector Components Prod. Liab. Litig.*, No. 1:14-CV-05696, 2018 WL 505089, at *6 (N.D. Ill. Jan. 22, 2018) ("[w]hen asked whether he knew anything about the [Rule 30(b)(6) subject] . .

9

. [he] answered, 'No, I don't' . . . [i]n light of this testimony, it seems indisputable that [the witness] was not a proper witness under Rule 30(b)(6)").

The remedy when a Rule 30(b)(6) witness lacks knowledge on the noticed topics is an order demanding the corporate entity provide a knowledgeable witness. *See In re Fluidmaster*, 2018 WL 505089 at *1 (ordering party subject to 30(b)(6) notice to "do what it should have done at the first Rule 30(b)(6) deposition: produce an appropriate witness to testify"); *Mintel Intern Group Ltd. v. Neerghen*, 2008 WL 4936745, at *4 (N.D. Ill. Nov. 17, 2008) ("[c]ourts have required parties to redesignate a corporate representative to testify where a witness initially chosen was unable or unprepared to testify."); Wright & Miller, § 2103 ("[o]ne remedy frequently invoked when the witness initially designated is unable to provide adequate answers is to require that another witness be designated.").

Here, Peerless identified Patrick Phipps as the witness to testify on Topics 12 and 13 in their entirety and one small portion of Topic No. 4. During deposition, he admitted that he was unprepared to address the categories. Specifically:

**Topics 12 and 13 concerns "Your Bona Fide Request (BFR) and Individual Case Basis (ICB) processes, and when and how You utilize them (Topic 12), and "Whether You uniformly post individual based contracts rates, terms, and conditions in any particular location for other customers to review and consider."**

Plaintiffs assert that Peerless's OTT calls are not covered by their access tariffs because those making and receiving OTT calls are not end users. To be an end user, Peerless, as a common carrier, must satisfy certain requirements, such as making services available to all similarly situated customers on non-discriminatory rates terms and conditions. *See, e.g.,* 47 U.S.C. § 202; *Iowa Network Servs., Inc. v. Qwest Corp.*, 363 F.3d 683, 686 (8th Cir. 2004) (noting that Section 201(a) requires "common carriers engaged in interstate communication to furnish communication service upon request, [and] to establish physical connections with other

10

carriers…."). The BFR and ICB processes utilized to make sure this occurs. Topic 12 goes to this. In addition, due to this obligation, carriers utilize various methods for making customers aware of their service offerings. Topic 13 goes to this.

In deposition, Mr. Phipps stated that there were two ICB processes: one for customers who obtain service via tariff, and one for customers who obtain services via contract. He then testified that all of Peerless's customers obtain services via contract, and he was unfamiliar with the contract ICB process. In addition, he admitted he had no idea if Peerless had any process for making customers aware of Peerless's service offerings. *See* Exhibit C, Deposition of Patrick Phipps, pp. 283–92. Plaintiffs seek to compel Peerless to present a witness prepared to address these two topics.

**TOPIC 4 concerns "Peerless' Tariff No. 4 and any addenda or modifications thereto, including but not limited to its implementation and interpretation, paying particular attention to the language defining Switched Access Service (§ 6.1.2) and the definition of "End User" (§ 2 – Definitions).**

One aspect of Plaintiff's OTT claims relates to whether the OTT calls made/received by Peerless's customers comply with their access tariffs. Plaintiffs claim (*inter alia*) that calls must be destined to end users for charges to apply. *See* ECF No. 104-1 ¶ 94. To be an end user a customer must, among other things, subscribe to local exchange service, which requires payment an end user common line (EUCL) charge. *Qwest Commc'ns Co., LLC v. Free Conferencing Corp.*, No. CV 10-490 (MJD/SER), 2017 WL 4618277, at *3 (D. Minn. Mar. 31, 2017), *aff'd*, 905 F.3d 1068 (8th Cir. 2018). Peerless's Interstate Tariff No. 4 states that Peerless "will provide Access Service to end users who obtain local exchange service from the Company under its general and/or local exchange tariffs or pursuant to contract. End User Access provides for the use of an End User Common Line (EUCL) under certain circumstances." Exhibit D (excerpts of Peerless's interstate tariff) at § 3.11. Peerless's witness testified that all of its services were

11

provided via contract; none were provided via tariff. Exhibit C, pp. 309–10. As a result, undersigned counsel asked Mr. Phipps the circumstances when Peerless would assess EUCL on customers who obtained services via contract. The witness admitted he had no idea:

> [Section] 3.11 says: "End user access provides for the use of an end user common line (EUCL), under certain circumstances." And I am not familiar with all the circumstances that surround our customer contracts and the language that is in those contracts. And so you're trying to ask me about why something doesn't happen in a contract that I'm just not familiar with. I don't get involved in those, when it comes to Peerless.

*See Exhibit C* pp. 272–78. Undersigned counsel immediately stated that he would go to the Court to get an answer to the question. *Id*. at 278–79. This question is central to the litigation, and Peerless should have a witness prepared to answer.

## **CONCLUSION**

Wherefore, Plaintiffs respectfully request that the Court grant this Motion for leave to take an additional 30(b)(6) deposition and to compel Peerless to produce a witnesses prepared to answer questions on three topics in Peerless's initial 30(b)(6) deposition.

\*   \*   \*

Dated: January 15, 2020

Respectfully submitted,

By: /s/ *Charles W. Steese*
Charles W. Steese #26924CO*
Douglas N. Marsh #45964CO*
ARMSTRONG TEASDALE LLP
4642 S. Ulster Street, Suite 800
Denver, Colorado 80237
(720) 200-0676
(720) 200-0679 (fax)
csteese@armstrongteasdale.com
dmarsh@armstrongteasdale.com

Robert J. Slobig
Bradley J. Axel
TORSHEN, SLOBIG & AXEL, LTD.
33 N. Dearborn St., Suite 1710
Chicago, Illinois 60602
rslobig@torshen.com
baxel@torshen.com
(312) 372-9282

*pro hac vice*

ATTORNEYS FOR PLAINITFF

## **CERTIFICATE OF SERVICE**

  I hereby certify that on January 15, 2020, I electronically filed the foregoing **MOTION FOR LEAVE TO TAKE ADDITIONAL 30(B)(6) DEPOSITION AND TO COMPEL PRODUCITON OF A PREPARED WITNESS ON CERTAIN ORIGINAL 30(B)(6) DEPOSITION TOPICS** with the Clerk of Court using the CM/ECF system which will send notification of such filings(s) to all counsel of record.

                */s/Vanessa Sanchez*