**IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| CENTURYLINK COMMUNICATIONS, LLC, et al., | ) ) | |
| | ) | |
| Plaintiffs/Counter-Defendants, | ) | Case No. 18-cv-3114 |
| | ) | |
| v. | ) | Honorable Sharon Johnson Coleman |
| | ) | |
| PEERLESS NEXTWORK, INC., et al., | ) | |
| | ) | |
| Defendants/Counter-Plaintiffs, | ) | |

## MEMORANDUM OPINION AND ORDER

Before the Court is plaintiffs' motion to strike and dismiss defendants' counterclaims VIII and IX brought under Federal Rules of Civil Procedure 12(b)(6) and 12(f). For the following reasons, the Court, in its discretion, denies plaintiffs' motion to strike defendants' counterclaims VIII and IX, and also denies plaintiffs' Rule 12(b)(6) motion to dismiss.

**Regulatory Background**

Both plaintiffs and defendants are national providers of Local Exchange Carriers ("LECs") and Interexchange Carriers ("IXCs") telecommunications services. LECs operate in a limited geographical area, whereas IXCs transport calls across LECs allowing customers to make calls to geographic areas outside of their own. The parties' interactions are governed by defendants' interstate and intrastate access to tariffs with the Federal Communications Commissions ("FCC"), as well as the parties' business arrangements. A tariff is a publicly filed contract that describes the carrier's rates, terms, and conditions for certain telecommunications services.

At the most basic level, telecommunication carriers exchanged telephone calls through the public switched network ("PSTN") utilizing a protocol known as time-division multi-plexing ("TDM"). Because telecommunications technology has been rapidly developing, more calls are now

being exchanged through Voice over Internet Protocol ("VoIP") technology instead of TDM.

The FCC regulates rates for intercarrier compensation, which has its challenges because the FCC's regulatory system was designed before the Internet. In 2011 the FCC updated its system for regulating intercarrier compensation in the Transformation Order *In re Connect America Fund*, 26 FCC Rcd. 17663 (2011). The order defined "End Office Access Service" and "Tandem-Switched Transport Access Service," under the FCC's VoIP symmetry rule, 47 C.F.R. § 51.913(b), allowing a VoIP provider and its LEC to charge for providing the functional equivalent of end office or tandem switching services. End office switching and tandem switching are two of the five rate categories that apply to switch access services. In 2015, the FCC issued a Declaratory Ruling *In re Connect America Fund*, 30 FCC Rcd. 1587 (2015), where the FCC concluded that VoIP calls qualify as end office switching services, but not tandem switching services. On appeal, the D.C. Circuit remanded the FCC's 2015 ruling because the FCC failed to adequately explain its rationale in interpreting its VoIP symmetry rule. *See AT&T Corp. v. FCC,* 841 F.3d 1047, 1048 (D.C. Cir. 2016). On December 17, 2019, the FCC interpreted its VoIP symmetry rule as permitting "LECs to assess end office switched access charges only if the LEC or its VoIP partner provides a physical connection to the last-mile facilities used to serve an end user." *In The Matter Of Connect America Fund Developing A Unified Intercarrier Compensation Regime,* 2019 WL 7018968, at *1 (2019). Where no physical connection is provided, LECs and their VoIP partners can only collect tandem switching rates. *Id.* at *8. The FCC acknowledged that its interpretation of the VoIP Symmetry Rule was a departure from its 2015 ruling. It also made its 2019 ruling retroactive.

**Procedural Background**

Based on the FCC's December 17, 2019 decision, the Court granted plaintiffs leave to amend their complaint to the extent that any of the proposed amendments related to the new ruling and were connected to charges already contained in plaintiffs' original complaint. Plaintiffs

amended their complaint on July 7, 2020 and on July 21, 2020, defendants filed their amended answer and counterclaims. In their amended counterclaim, defendants brought equitable claims, including a breach of implied contract claim in counterclaim VIII and a quantum meruit claim in counterclaim IX, in response to plaintiffs' allegations concerning switch access rates.

In the present motion, plaintiffs seek to strike these two counterclaims under Rule 12(f) because defendants brought them well past the April 30, 2019 deadline to amend pleadings pursuant to the Court's scheduling order. In the alternative, plaintiffs seek dismissal of these claims under Rule 12(b)(6) based on the filed-rate doctrine.

**Legal Standards**

Rule 12(f) provides that a district court "may strike from a pleading an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter." Fed.R.Civ.P. 12(f). Courts have considerable discretion when ruling on Rule 12(f) motions. *Royce v. Michael R. Needle P.C.*, 950 F.3d 939, 952 (7th Cir. 2020). Also, "district courts have the inherent authority to manage their dockets and courtrooms with a view toward the efficient and expedient resolution of cases." *Dietz v. Bouldin,* ---U.S. ----, 136 S.Ct. 1885, 1892, 195 L.Ed.2d 161 (2016).

A motion to dismiss pursuant to Rule 12(b)(6) for failure to state a claim tests the sufficiency of the complaint, not its merits. *Skinner v. Switzer*, 562 U.S. 521, 529, 131 S.Ct. 1289, 179 L.Ed.2d 233 (2011). When considering dismissal of a complaint, the Court accepts all well-pleaded factual allegations as true and draws all reasonable inferences in favor of the plaintiff. *Erickson v. Pardus*, 551 U.S. 89, 94, 127 S.Ct. 2197, 167 L.Ed.2d 1081 (2007) (per curiam). To survive a motion to dismiss, the plaintiff must "state a claim for relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007). A complaint is facially plausible when the plaintiff alleges "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S.Ct. 1937,

173 L.Ed.2d 868 (2009).

**Discussion**

*Rule 12(f) Motion to Strike*

Plaintiffs first argue that the Court should strike defendants' new counterclaims that seek equitable relief based on the FCC's December 2019 decision as untimely and that defendants did not seek leave to add the counterclaims. Plaintiffs assert that from the beginning of this lawsuit, they have challenged defendants' end office VoIP charges, and fronted the possibility that based on the D.C. Circuit Court's remand in *AT&T Corp. v. FCC*, 841 F.3d 1047, 1049 (D.C. Cir. 2016), the FCC might alter its interpretation of its VoIP symmetry rule, 47 C.F.R. § 51.913(b).

Defendants counter that the FCC's December 2019 Ruling changes the scope of the case in relation to its VoIP charges in relation to end office switching. The Court agrees, especially because the FCC made its ruling retroactive. Prior to this ruling, a physical connection was not required for end office switching charges. Moreover, plaintiffs' amended complaint seeks to invalidate all switch access charges where defendants did not provide a physical last mile facility, but the December 2019 ruling allows defendants to assess tandem switching charges, although these rates are generally lower than end office switching rates. Defendants' counterclaims respond directly to plaintiffs' reliance on the FCC's December 2019 ruling in its amended complaint by seeking equitable relief based on services that defendants have already provided that may be subject to the tandem switching rates.

Because the FCC's December 2019 Ruling changed the scope of this lawsuit in respect to the end office switching charges and defendants' counterclaims directly relate to plaintiffs' amended allegations, the Court, in its discretion, denies plaintiffs' motion to strike the equitable counterclaims.

*Rule 12(b)(6) Motion to Dismiss*

Next, plaintiffs argue that the Court should dismiss defendants' counterclaims because defendants are seeking to collect switched access charges in violation of the filed-rate doctrine.

4

Under the filed-rate doctrine, "carriers are required to charge rates and otherwise abide by the terms set forth in the filed tariffs." *Dreamscape Design, Inc. v. Affinity Network, Inc.,* 414 F.3d 665, 668 (7th Cir. 2005) (citing *AT & T v. Cent. Office Tel., Inc.,* 524 U.S. 214, 222, 118 S.Ct. 1956, 141 L.Ed.2d 222 (1998)). Accordingly, "[c]arriers are specifically prohibited from deviating from the tariffed rates and are not free to negotiate different rates with customers." *Dreamscape Design*, 414 F.3d at 668.

In response, defendants maintain that they filed equitable claims to recover charges that were properly tariffed, but that the FCC has retroactively ruled that these charges must be assessed at a different rate. Thus, these charges are not outside the filed tariff as plaintiffs suggest. The Court therefore denies plaintiffs' Rule 12(b)(6) motion.

**Conclusion**

Based on the foregoing, the Court denies plaintiffs' motion brought pursuant to Rules 12(b)(6) and 12(f) [173].

IT IS SO ORDERED.

Date: 3/24/2021                         Entered:

SHARON JOHNSON COLEMAN
United States District Court Judge