UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| CENTURYLINK COMMUNICATIONS, LLC, et al. | ) ) ) |
| Plaintiffs/Counter-Defendants, | ) ) |
| v. | ) ) |
| PEERLESS NETWORK, INC., et al., | ) ) |
| Defendants/Counter-Plaintiffs. | ) ) |

Case No. 18-cv-03114

Judge Sharon Johnson Coleman

**MEMDORANDUM OPINION AND ORDER**

Before the Court is plaintiffs' motion to refer OTT-VoIP issues to the FCC under the doctrine of primary jurisdiction [232]. For the following reasons, plaintiffs' motion is granted.

**Background**

Routing phone calls in the United States has developed rapidly in recent years, with carriers moving from physical wires and switches to packets of data sent over Internet Protocol-based networks, known as Voice over Internet Protocol ("VoIP") technology. The Federal Communications Commission's ("FCC") regulatory regime has had to keep up with this evolution. Now, under the VoIP Symmetry Rule, the FCC permits companies providing VoIP services to charge rates for providing the functional equivalent of switched-network services. In 2015, the FCC issued a Declaratory Ruling interpreting this rule such that providers could charge end office switching rates for VoIP calls irrespective of whether they provided a physical connection to the last-mile facilities. *See In re Connect America Fund*, 30 FCC Rcd. 1587 (2015). The rule was challenged, and the United States Court of Appeals for the D.C. Circuit vacated the 2015 ruling and remanded to the FCC. *See AT&T Corp. v. FCC*, 841 F.3d 1047 (D.C. Cir. 2016).

On December 17, 2019, the FCC clarified its interpretation of the VoIP Symmetry Rule, and

stated "that a VoIP provider, or its LEC ['local exchange carrier'] partner, provides the functional equivalent of end office switching only when it provides a physical connection to the last-mile facilities used to serve an end user." *In re Connect America Fund Developing a Unified Intercarrier Compensation Regime*, 2019 WL 7018968, at *8 (2019) (the "December 2019 Order"). Where no physical connection is provided, carriers may not assess end office switched access charges. *Id.* at *1. The FCC acknowledged that its interpretation of the VoIP Symmetry Rule was a departure from its 2015 ruling. It also made the 2019 ruling retroactive.

Based on the FCC's December 2019 Order, the Court granted plaintiffs (collectively "CTL") leave to amend their complaint, provided the amendments related to the new ruling and were connected to charges in the original complaint. CTL amended its complaint on July 7, 2020. In September and October 2020, the parties served expert reports and then took expert depositions in March 2021.

On May 11, 2021, CTL filed the present motion, which seeks to refer three issues to the FCC under the doctrine of primary jurisdiction. On December 21, 2021, months after briefing on the motion to refer had concluded, defendants (collectively "Peerless") filed a motion for leave to file supplemental authority in support of their opposition to CTL's motion to refer [241], which the Court granted. The Court has reviewed the briefing on CTL's motion to refer, as well as the briefing on Peerless's motion for leave to file supplemental authority.

**Legal Standards**

The doctrine of primary jurisdiction "'comes into play whenever enforcement of a claim requires the resolution of issues which, under a regulatory scheme, have been placed within the special competence of an administrative body'—in such circumstances, a court has the authority to suspend the judicial process 'pending referral of such issues to the administrative body for its

views.'" *Advanced Dermatology v. Fieldwork, Inc.*, –- F. Supp. 3d —, 2021 WL 3077663, at *9 (N.D. Ill. July 21, 2021) (Tharp, J.) (quoting *Ill. Bell Tel. Co. v. Global NAPs Ill., Inc.*, 551 F.3d 587, 594 (7th Cir. 2008)). It "allows a federal court to refer a matter extending beyond the 'conventional experiences of judges' or 'falling within the realm of administrative discretion' to an administrative agency with more specialized experience, expertise, and insight." *In re StarNet, Inc.*, 355 F.3d 634, 639 (7th Cir. 2004) (quoting *Nat'l Commc'ns Ass'n, Inc. v. AT&T Co.*, 46 F.3d 220, 222–23 (2d Cir. 1995)); *Arsberry v. Illinois*, 244 F.3d 558, 563 (7th Cir. 2001) (primary jurisdiction doctrine "allows a court to refer an issue to an agency that knows more about the issue, even if the agency hasn't been given exclusive jurisdiction to resolve it"). There is no "fixed formula" for applying the doctrine of primary jurisdiction. *Ryan v. Chemlawn Corp.*, 935 F.2d 129, 131 (7th Cir. 1991) (quoting *United States v. W. Pac. R.R. Co.*, 352 U.S. 59, 64, 77 S. Ct. 161, 165, 1 L.E.2d 126 (1956)). Rather, "the question is whether the reasons for the existence of the doctrine are present and whether the purposes it serves will be aided by its application in the particular litigation." *Id.*

Factors that courts have considered in determining whether to invoke the primary jurisdiction doctrine include: whether the issue is within the conventional experience of judges; whether the matter involves technical issues within the agency's particular field of expertise and would involve the exercise of agency discretion; whether the issue has already been before the agency; the need for consistency and uniformity and the likelihood of inconsistent rulings if the matter is not referred; whether referral will result in substantial delay and added expense; and whether judicial economy will be served by having the agency resolve the issue. *Id.*; *Gilmore v. Sw. Bell Mobile Sys.*, 210 F.R.D. 212, 221 (N.D. Ill. 2001) (Hart, J.).

**Discussion**

CTL moves to refer three questions to the FCC under the primary jurisdiction doctrine: (1) what percentage of Peerless's traffic is OTT-VoIP; (2) whether Peerless may assess tandem switching charges in lieu of end office charges on OTT-VoIP calls; and (3) whether Peerless's interstate access tariff can be interpreted to permit Peerless to assess tandem switching charges on OTT-VoIP calls. CTL argues that the FCC's subject-matter expertise and oversight of the telecommunications industry make it uniquely qualified to answer these questions. In particular, CTL claims that answering these questions requires an analysis of what constitutes an OTT-VoIP call, as well as the interpretation of FCC orders and Peerless's interstate tariff. CTL further argues that the need for uniformity across the industry weighs in favor of referral.

In response, Peerless claims that, although it disagrees with CTL's conclusions about whether CTL has to pay for the services Peerless provides, "this does not make the issues technically unique." (Dkt. 238 at 3.) Peerless further claims that the issues for which CTL seeks referral "involve traditional questions on the application of the FCC's VoIP Symmetry Rule" and that the FCC has already ruled on these issues via the December 2019 Order. (*Id.* at 6.) Additionally, Peerless suggests that CTL is not seeking clarification from the FCC on these issues, but instead is forum shopping and trying to obtain a "friendlier venue" in the FCC. (*Id.* at 1.) Peerless also argues that referral will result in substantial delay and added expense.

The Court agrees with CTL and finds it appropriate to refer these issues to the FCC. While the December 2019 Order may have provided sufficient clarity regarding the ability to assess end office switched access charges—either a carrier provides a physical connection to the last-mile facility or it does not—the issues raised in the instant motion are distinct.

First, determining the percentage of Peerless's traffic that is OTT-VoIP is a separate issue from whether a carrier is permitted to assess end office switched access charges. That determination is better suited for those at the FCC with such expertise. Prior to the December 2019 Order, two courts addressing similar issues noted that "judges with no technical background in telecommunications are ill-prepared when compared to the FCC to decide what services if any performed by over-the-top VoIP-LEC providers constitute the 'functional equivalent' of the end-office switching." *See Teliax, Inc. v. AT&T Corp.*, No. 15-cv-1472, 2017 WL 3839459, at 2–3 (D. Colo. Sept. 1, 2017); *Peerless Network, Inc. v. MCI Commc'ns Servs., Inc.*, No. 14 C 7417, 2018 WL 1378347, at *11 (N.D. Ill. Mar. 16, 2018) (Durkin, J.). Though the December 2019 Order may have negated the need for a referral to the FCC on the issue of end-office switching (as in the above cases), it does not provide sufficient clarity on determining the percentage of traffic that is OTT-VoIP such that this Court would be as equipped to handle the issue as the FCC.

The second and third issues for which CTL seeks referral are related and also better suited for the FCC. According to CTL, the parties focus on competing language from the December 2019 Order to support their positions. CTL claims tandem switching charges are permissible only if a tariff or contract permits the charges, pointing to language from the December 2019 Order that reads: "We leave carriers to determine the appropriate compensation for such services in accordance with their agreements and applicable tariffs." December 2019 Order, at *8, ¶ 23 n.65. Peerless claims it can assess tandem switching charges in lieu of end office charges and that the December 2019 Order "is sufficiently clear for [the] court to apply in litigation like the instant case." (Dkt. 238 at 7.) Peerless highlights the Order's language that it "provides a bright-line distinction between tandem switching and end office switching." (*Id.* (citing December 2019 Order, at *8, ¶ 23).)

The December 2019 Order's bright-line distinction does not answer the issues that CTL seeks to refer to the FCC. The Order addressed when a carrier is permitted to charge end office switching rates and when it is not. But prohibiting a carrier from charging an end office rate does not, as Peerless seems to suggest, clarify whether that carrier can instead assess tandem switching charges on OTT-VoIP calls regardless of the language in tariffs or contracts. As with the percentage of traffic that should be classified as OTT-VoIP, the FCC is also better situated to determine the permitted rate on that traffic.

The Court has also considered Peerless's supplemental authority and finds it unpersuasive. Peerless claims that a federal court in the District of Colorado recently adjudicated similar issues in *AT&T Corp. v. Level 3 Communications, LLC*, No. 18-cv-00112, 2021 WL 1140215 (D. Colo. Mar. 25, 2021). But the *Level 3* court did not adjudicate the issues raised in CTL's motion. Regarding the percentage of traffic that OTT-VoIP comprised, the court noted that the defendant used a 21 percent ceiling to "facilitate the parties' ongoing discussions." *Id.* at *4 n.2. The court merely incorporated the agreed-upon percentage into its subsequent September 2021 decision. 2021 WL 4167339, at *2–3 (D. Colo. Sept. 14, 2021). It did not determine the precise breakdown of traffic that was OTT-VoIP.

Peerless additionally cites the *Level 3* opinion to support its contention that courts can and do adjudicate rate disputes like these. However, the parties agreed in that case that, "in the absence of a negotiated agreement, the applicable rate for OTT traffic is the tandem rate." 2021 WL 1140215, at *4. That other parties agreed on an appropriate rate during litigation does not support Peerless's claim that the Colorado court adjudicated the issue.

Peerless also seems to indicate that CTL's settlement with another carrier, Teliax Colorado, LLC, in another case obviates the need for this referral to the FCC, either because the parties chose

to settle rather than continue to litigate and have the FCC determine underlying issues or because now there is no chance of inconsistent decisions. Neither argument weighs against referral in this case. Parties are not required to continue litigation long enough to ensure the FCC opines on contested issues, and the concern regarding uniform outcomes is still present even though the *Teliax* case is no longer pending. The Court thus finds Peerless's supplemental authority unpersuasive regarding the issues CTL seeks to refer to the FCC.

Peerless's remaining arguments center primarily on logistical issues—CTL's failure to bring the action initially to the FCC and delay in seeking referral to the FCC after filing. These arguments are also unavailing. The parties' experts differed as to their opinions on the application of the December 2019 Order, and their depositions took place shortly before CTL filed the at-issue motion to refer. Additionally, any delay on CTL's part does not change the underlying technical aspects of the issues in CTL's motion for which the FCC is better suited.

The question the Court must answer in this case "is whether the reasons for the existence of the doctrine [of primary jurisdiction] are present and whether the purposes it serves will be aided by its application in th[is] particular litigation." *Ryan*, 935 F.2d at 131 (citation omitted). They are. As stated above, the parties' competing experts opine on issues regarding which agency guidance is needed to fill in blanks that remain despite the December 2019 Order. The questions raised in CTL's motion are not squarely addressed in the Order and "require[] the resolution of issues which, under a regulatory scheme, have been placed within the special competence of an administrative body." *Advanced Dermatology*, 2021 WL 3077663, at *9 (quoting *Global NAPs Ill.*, 551 F.3d at 594). While the Court recognizes that this case has been pending for some time, it does not believe that referral will increase the delay, and in fact may expedite rulings on these technically complex issues. Referral to the FCC is thus appropriate.

**Conclusion**

For the foregoing reasons, CTL's motion to refer OTT-VoIP issues to the FCC under the primary jurisdiction doctrine [232] is granted.

IT IS SO ORDERED.

Date: 3/1/2022

Entered: _____
SHARON JOHNSON COLEMAN
United States District Court Judge