UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| CENTURYLINK COMMUNICATIONS, LLC, et al.,<br><br>  Plaintiffs/Counter-Defendants,<br><br>v.<br><br>PEERLESS NETWORK, INC., et al.,<br><br>  Defendants/Counter-Plaintiffs. | Case No. 18-cv-03114<br><br>Judge Sharon Johnson Coleman |

**MEMDORANDUM OPINION AND ORDER**

Before the Court is defendants' motion to strike and exclude pursuant to Federal Rule of Civil Procedure 37 [222]. For the following reasons, defendants' motion is granted.

**Background**

This case stems from disputes over charges related to telecommunications services, which are at times governed by defendants' interstate tariffs filed with the Federal Communications Commission ("FCC") and other times by written agreements between the parties. Plaintiffs/Counter-Defendants CenturyLink Communications, LLC et al. (collectively "CTL") filed an initial complaint on May 1, 2018, alleging that Defendants/Counter-Plaintiffs Peerless Network, Inc., et al. (collectively "Peerless") inappropriately billed CTL for six distinct categories of charges. (Dkt. 1.) Peerless filed its answer, affirmative defenses, and counterclaims on September 11, 2018. (Dkt. 23.) CTL, in turn, filed its answer and affirmative defenses to Peerless's counterclaims. (Dkt. 28.) Pursuant to the Court's participation in the Mandatory Initial Discovery Pilot Project ("MIDP"),[1] the parties exchanged mandatory initial disclosures in October and November 2018.

---

[1] Under the Court's Mandatory Initial Discovery Pilot Project, parties were required to provide certain discovery responses without the need for any request from the opposing party. (Dkt. 7.) The MIDP is no longer enforced in this district.

(Dkts. 29, 35, 222-1, 222-2, 236-2.)

In January 2019, the magistrate judge amended the discovery schedule and set an April 30, 2019 deadline to file any motions to amend the pleadings. (Dkt. 40.) Peerless timely sought to amend its counterclaims, which the Court granted, and CTL filed its answer and affirmative defenses to the amended counterclaims on May 31, 2019. (Dkts. 55 & 57.) On July 15, 2019, CTL filed a motion for leave to file an amended complaint, seeking to add three counts alleging that Peerless's billing practices related to "common trunk port charges" in the state of Georgia violate the FCC benchmark rules. (Dkt. 66.) The Court denied CTL's motion on October 1, 2019. (Dkt. 74.)

Two months later, CTL filed a motion to amend the complaint to conform to facts uncovered in discovery and clarify existing charges sought in the original complaint. (Dkt. 104.) As to three of the proposed amendments, the Court found that CTL had failed to show good cause for why the amendments were not raised prior to the April 30, 2019 deadline. (Dkt. 139 at 2–4.) This included a request to modify the complaint to reflect that Peerless had been charging indirect "dedicated tandem trunk port" ("DTTP") charges pursuant to Peerless's interstate tariff, rather than common trunk port charges. CTL moved for reconsideration on this portion of the Court's order, which the Court denied. (Dkts. 143 & 154.)

On July 7, 2020, CTL served its third set of document production requests, which included requests regarding the rates charged by Peerless in Georgia and Illinois and their relation to the FCC's benchmark rules. (Dkt. 169-2.) Peerless objected, and CTL filed a motion to compel production of the documents on August 7, 2020. (Dkt. 169.) During the last three days of discovery, CTL served a number of additional disclosures, including supplemental mandatory initial disclosures, interrogatory responses, and document production. (Dkts. 222-7, 222-8, 222-9, 222-10, and 222-11.) After fact discovery closed, the magistrate judge denied CTL's motion to compel

discovery related to the benchmark issue. (Dkts. 149 & 186 at 6–9.) The parties proceeded with expert disclosures in September and October 2020, and later took expert depositions in March 2021.

On April 20, 2021, Peerless filed this motion to strike and exclude, which CTL opposes. For the following reasons, the Court grants Peerless's motion.

**Legal Standards**

Federal Rule of Civil Procedure 26(a)(1) requires parties, "without awaiting a discovery request," to provide initial disclosures "based on the information then reasonably available to [them]." Fed. R. Civ. P. 26(a)(1)(A), (E). Under Rule 26(e), a party who has made a disclosure under Rule 26(a) or who has responded to an interrogatory must supplement or correct its disclosure or response "in a timely manner if the party learns that in some material respect the disclosure or response is incomplete or incorrect, and if the additional or corrective information has not otherwise been made known to the other parties during the discovery process or in writing." Fed. R. Civ. P. 26(e)(1)(A).

If a party fails to comply with its disclosure obligations under Rule 26(a) or (e), Rule 37(c) generally prohibits the party from using that information "to supply evidence on a motion, at a hearing, or at a trial, unless the failure was substantially justified or is harmless." Fed. R. Civ. P. 37(c)(1).[2] The sanction of exclusion is "automatic and mandatory" unless the party can show that its violation was substantially justified or harmless. *David v. Caterpillar, Inc.*, 324 F.3d 851, 857 (7th Cir. 2003). District courts have broad discretion to determine whether a violation of Rule 26(a) or (e) is

---

[2] As noted above, this case was subject to the MIDP, which required the parties to provide certain discovery responses without the need for any request from the opposing party. Although the parties' discovery obligations under the MIDP supersede the disclosures required by Rule 26(a)(1), the standards governing the parties' MIDP disclosure obligations are substantively the same as those provided under Rules 26(a) and (e). *See* Mandatory Initial Discovery Pilot Project Standing Order, Dkt. 7 at 1–2. Rule 37(c)(1) applies to mandatory discovery responses required by the Court's MIDP Standing Order. (Dkt. 7 at 3, ¶ 9.)

substantially justified, harmless, or warrants sanctions. *Dynegy Mktg. & Trade v. Multiut Corp.*, 648 F.3d 506, 514 (7th Cir. 2011) (citing *Caterpillar*, 324 F.3d at 857). Although the court "need not make explicit findings concerning the existence of a substantial justification or the harmlessness of a failure to disclose," the following factors guide the court's determination: "(1) the prejudice or surprise to the party against whom the evidence is offered; (2) the ability of that party to cure the prejudice; (3) the likelihood of disruption to the trial; and (4) the bad faith or willfulness involved in not disclosing the evidence at an earlier date." *Caterpillar*, 324 F.3d at 857 (citations omitted).

**Discussion**

Peerless moves to strike CTL's August 14, 2020 supplemental mandatory discovery disclosures and interrogatory responses as untimely and prevent CTL from submitting any evidence related to allegations in those disclosures. According to Peerless, during the last three days of fact discovery, CTL asserted several affirmative defenses for the first time under the guise of supplementing its initial disclosures and discovery responses. This included CTL's indirect DTTP and benchmark disputes, despite the Court's prior orders denying leave to amend to include those claims. Peerless also claims that CTL's supplemental disclosures purported to add multiple new disputes to the case, on which no discovery had been conducted. Peerless argues that CTL's failure to timely disclose these claims and defenses was neither substantially justified nor harmless, warranting exclusion under Rule 37(c)(1).

CTL responds that it has committed no violation of Rule 26 and the fault lies with Peerless. It maintains that it has always believed that Peerless's counterclaims "were the exact inverse of CTL's claims," and it made numerous attempts to pin down Peerless's counterclaims throughout this case, including through interrogatories, depositions, and emails. (Dkt. 236 at 4.) CTL contends that, as a result of Peerless's refusal to explain the scope of its counterclaims, it "had no choice but

4

to supplement its discovery responses to protect itself from the unknown." (*Id.*) Furthermore, regardless of the timing of its supplemental disclosures, CTL argues that Peerless was already on notice of its positions. As to the indirect DTTP charges that it seeks to recover, CTL claims that it should be allowed to raise the issue as an affirmative claim at trial, because Peerless actively concealed information from CTL and the Court. CTL claims that the Court's prior orders do not foreclose this because these charges "are within the scope of CTL's claim already," and Peerless has known that they were a part of the lawsuit all along. (*Id.* at 2–3.) CTL also ostensibly argues that its assertion of various defenses to "miscellaneous charges" for the first time at the close of fact discovery was warranted, because Peerless refused to clarify the scope of its counterclaims.

*Indirect DTTP Charges*

The Court begins with the indirect DTTP charges. On December 4, 2019, CTL filed a motion for leave to amend the complaint to modify one of its categories of charges, known as "common trunk port charges," to reflect changes in evidence uncovered during discovery. (Dkt. 104.) In the original complaint, CTL alleged that it was billed common truck port charges. In seeking leave to amend, CTL claimed it had only recently discovered that Peerless had been charging indirect DTTP charges pursuant to Peerless's interstate tariff. According to CTL, Peerless's invoices did not make it clear that it was billing indirect DTTP charges. CTL argued that, regardless of which type of charge Peerless applied, both were unlawful, and it wanted the complaint to accurately reflect the evidence that had been discovered through the September 2019 deposition of Peerless's Rule 30(b)(6) representative and CTL's subsequent investigation into the bills. The Court found that CTL could have discovered the nature of the charges in the four years it had been billed for them and denied CTL's request to amend the complaint as to those charges due to its lack of diligence.

CTL moved for reconsideration. It claimed that Peerless failed to provide information that

would have led to the correct identification of charges before the deadline for amending the pleadings had passed. (Dkt. 143.) CTL also argued that the indirect DTTP charges were already at issue via Peerless's counterclaims. (*Id.*) The Court denied CTL's motion, as it had already found that CTL could and should have discovered the nature of the charges by properly examining the invoices that were in its possession for the four years that it was being billed. (Dkt. 154.)

Thereafter, on the last three days of fact discovery, CTL made several disclosures concerning the indirect DTTP charges. Peerless raises two issues with the disclosures as they relate to indirect DTTP charges: (1) CTL continues its attempts to affirmatively assert an indirect DTTP claim despite the Court's prior orders denying leave to amend, and (2) CTL used its disclosures to also assert the indirect DTTP dispute as an affirmative defense for the first time at the close of fact discovery. (Dkt. 222 at 8, 11–13.) CTL responds that it should be permitted to raise the indirect DTTP charges as an affirmative claim at trial because Peerless "withheld critical information" from CTL and the Court. (Dkt. 236 at 2–3.) Specifically, CTL claims that Peerless did not tell CTL or the Court that Peerless initially billed common trunk port charges with common trunk port rates "and then, mid-stream, changed the rates on invoices while still calling the charges CTP." (*Id.* at 3.) CTL contends that Peerless's "active concealment" led CTL to believe the charges were common trunk port charges, rather than indirect DTTP charges, and CTL should be allowed to raise this issue at trial. (*Id.*) Additionally, CTL claims that the Court's prior orders do not change the fact that the charges are within the scope of CTL's claims already.

It is apparent that CTL is again seeking to include indirect DTTP charges in this action however possible. CTL makes two arguments, only one of which is new. First, it contends that it should be allowed to raise this issue as an affirmative claim at trial because a June 2020 deposition revealed a new, material fact: that Peerless billed CTL common trunk port charges for two months

in 2015. Second, CTL again claims that the indirect DTTP issue is merely one of form, and these charges have been within the scope of the at-issue claims all along. Both arguments are unavailing.

CTL claims that information gleaned from a June 2020 deposition changes the landscape. Prior to the deposition, CTL claimed the issue was that the indirect DTTP charges were not clearly described on the bills and that, according to the 2019 testimony of Peerless's Rule 30(b)(6) witness, common trunk port rates had never been charged. But the only claimed change in circumstances following the June 2020 deposition is that Peerless did assess common trunk port charges for two months in late 2015. This information does not alter the Court's prior finding that CTL could and should have discovered the nature of the charges by properly examining the invoices that were in CTL's possession for the four years that it was being billed. The Court is likewise unpersuaded by CTL's argument, which it already made in the briefing on its motion for leave to amend, that it should be allowed to raise the indirect DTTP charges because the common trunk port charges have been a part of this case from the outset. The Court will not recount the variations of this argument that the Court has already considered and rejected.

*Benchmark Claims*

As with the indirect DTTP issue, the Court has heard and addressed the parties' benchmark arguments previously.

In July 2019, CTL sought leave to amend its complaint to add three counts alleging that Peerless's billing practices related to common trunk port charges in the state of Georgia violate the FCC benchmark rules. (Dkt. 66.) This Court denied CTL's motion to amend on the ground that it was untimely, as CTL filed the motion three months after the deadline for amending the pleadings and nearly eleven months after the alleged interstate tariff change that CTL contended gave rise to the need to amend. (Dkt. 74.)

Thereafter, CTL did not seek discovery on the benchmark issue until July 7, 2020, when it served its third set of document production requests. (Dkt. 169-2.) CTL ultimately brought a motion to compel production of the documents, which the magistrate judge denied. In that opinion, the magistrate judge explained, "Beyond the fact that it did not pursue discovery of the benchmark issue until July 2020, CenturyLink [CTL] did not formally indicate that it intended to raise the matter as an affirmative defense until the day discovery closed." (Dkt. 186 at 8.) The magistrate judge found unpersuasive CTL's arguments that (1) Peerless had put its rates "at issue" and CTL was entitled to discovery into the legality of the rates so that it could defend against Peerless's counterclaims; and (2) CTL's ongoing communications with Peerless had put Peerless on notice that CTL contended that these rates were unlawful. The magistrate judge explained that "nothing that CenturyLink said or did indicated to Peerless that CenturyLink's affirmative defense specifically referred to the benchmark matter" and that CTL "did not plead any specific facts relating to its affirmative defenses until the final day of discovery." (*Id.*) Thus, the magistrate judge concluded, "We will not allow CenturyLink to bootstrap its defense by filing a last-minute amendment to its initial disclosures and then arguing that it needs discovery to support those disclosures." (*Id.* at 8–9.)

*Miscellaneous Claims*

In addition to the indirect DTTP and benchmark allegations, Peerless seeks to exclude evidence related to other miscellaneous charges on timeliness grounds. *See* Dkt. 222 at 14–15. CTL maintains that it tried to determine whether Peerless's counterclaims covered these miscellaneous charges "[f]or many months," but Peerless refused to answer CTL's requests for clarity. (Dkt. 236 at 2.) CTL claims that it supplemented its disclosures and discovery responses in the last three days of fact discovery "only out of an abundance of caution because it could not get a straight answer from

8

Peerless." (*Id.* at 2, 8) CTL concludes that, because Peerless created this problem, Rule 37 sanctions are unavailable to it.

The Court is unpersuaded by CTL's arguments. CTL's arguments flow from a November 20, 2019 email in which CTL listed every dispute that it had against Peerless and specifically noted the disputes that were involved in the litigation. (*Id.* at 4–5, 13–15.) CTL claims that it has always believed that Peerless's counterclaims were the "exact inverse of CTL's claims," as "nothing in Peerless's Counterclaims suggested otherwise." (*Id.* at 3–4.) However, in the months following the above email, CTL sought clarity on the scope of Peerless's counterclaims at several junctures, both formally through interrogatories and informally through additional emails. CTL claims that Peerless's responses left it "confused" and "uncertain" at every turn. (*Id.* at 5–8.) In fact, CTL sought court intervention to remedy its confusion—and the magistrate judge granted CTL relief. The Court ordered Peerless to supplement its responses to certain interrogatories by February 28, 2020. (Dkt. 123 at 7–10.) After receiving the supplemental responses, CTL claims it still lacked the requisite clarity and again pursued more detail from Peerless via email. (Dkt. 236 at 6–8.) CTL contends that Peerless's response "likewise ma[de] no sense." (*Id.* at 8.) CTL chose not to seek court intervention on this issue right away but instead unloaded a bevy of disclosures on Peerless, adding new facts and legal theories, in the final 72 hours of fact discovery (the overwhelming majority of which occurred on the last day of discovery). (*Id.*)

*Rule 37 Sanctions Are Warranted*

Given the facts discussed above, CTL's supplemental disclosures and responses provided at the close of discovery were untimely under Rule 26. Nothing in CTL's opposition provides support for serving the supplemental disclosures at the close of fact discovery. In fact, the only alleged late-breaking information was testimony that common trunk port charges were assessed for two months

in late 2015, when they were previously thought to never have been assessed. Even upon learning this information, CTL waited more than a month before supplementing its disclosures. As discussed above, this information has no material effect on any of the Court's prior decisions denying CTL leave to amend its pleadings on this or other issues.

Because the Court finds the disclosures were untimely, the sanction of exclusion is "automatic and mandatory" unless the tardiness was substantially justified or harmless. *Caterpillar*, 324 F.3d at 857. Although the Court "need not make explicit findings," it looks to the *Caterpillar* factors for guidance and finds the weight of those factors favors exclusion in this case. *Id.* While CTL maintains that there was no Rule 26(e) violation, it alternatively argues that its conduct was (1) substantially justified because Peerless's actions caused the delay; and (2) harmless because Peerless "has long known each basis for CTL's disputes of its charges." (Dkt. 236 at 14 n.3.) The Court disagrees.

First, the prejudice to Peerless at having to defend against claims previously and continually disallowed by the Court, as well as newly-asserted affirmative defenses, would be great and weighs in favor of exclusion. Not only do the proffered supplemental disclosures belatedly add new defenses and theories, but they also appear to be an end-run around prior decisions by this Court limiting the claims allowed by CTL, as enumerated above. The second factor—the ability to cure the prejudice—also weighs in favor of exclusion. Fact discovery ended more than a year and a half ago, so any claims, defenses, or theories now placed at issue would not be subject to additional development and fact-finding between the parties. Thus, any prejudice or surprise that the disclosures bring will not be tempered by additional discovery. Permitting CTL's late disclosures would also likely disrupt trial, which weighs in favor of exclusion. Again, CTL has sought to include some of these issues before. The Court considered argument from the parties and made decisions.

The parties no doubt relied on the Court's decisions in subsequent discovery, including depositions, as part of their trial preparation. Finally, the Court does not find that CTL provided its supplemental disclosures in bad faith. However, CTL was presumably aware of its own claimed confusion as to Peerless's counterclaims at least by the time Peerless supplemented its interrogatory responses pursuant to the magistrate judge's order on CTL's motion to compel—several months prior to its supplemental disclosures. CTL had procedural mechanisms available to it other than its choice to provide its additional disclosures on the last day of discovery, but it chose not to exercise them. Given the posture and prior filings in this case, particularly regarding the indirect DTTP and benchmark issues, the Court finds that CTL's untimely disclosures were neither substantially justified nor harmless.

Peerless's motion is granted in accordance with the above. The Court's sanction is limited to the new claims, defenses, or theories provided in CTL's supplemental disclosures and discovery responses and does not offer an opinion as to the catch-all category listed in No. 8 of Peerless's motion. (*See* Dkt. 222 at 15 (No. 8 seeks to exclude evidence related to "[a]ny other vague claim for which Plaintiffs have not timely asserted as a claim challenging Peerless's tariff rates, or for which it has not disclosed the relevant facts or legal theories supporting any defense.").)

**Conclusion**

For the foregoing reasons, Peerless's motion to strike and exclude [222] is granted as set forth in this opinion.

IT IS SO ORDERED.

Date: 3/23/2022

Entered: _____
SHARON JOHNSON COLEMAN
United States District Court Judge

11